# IN THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

14-4263

---

### UNITED STATES OF AMERICA

Appellee,

v.

### THOMAS LAMONT LEGALL, a.k.a., CLARENCE SHAMEL RAHMEIK GATLING

Appellant.

---

*ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA AT NEWPORT NEWS*

---

### APPELLANT'S BRIEF

---

**Crystina M. O'Brien**
*The O'Brien Law Firm, PLC*
21 E. Queens Way, Suite B
Hampton, VA 23669
PHONE: (757) 915-6986
FAX: (757) 915-6988
cob@cobrienlawfirm.com
ATTORNEY FOR APPELLANT

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ............................................................................... ii

TABLE OF AUTHORITIES ....................................................................3

JURISDICTIONAL STATEMENT ..........................................................5

STATEMENT OF THE ISSUE ................................................................6

STATEMENT OF THE CASE .................................................................6

STATEMENT OF FACTS ………………………………………….9

SUMMARY OF THE ARGUMENT .....................................................13

ARGUMENT ........................................................................................15

CONCLUSION .....................................................................................24

REQUEST FOR ORAL ARGUMENT…………………………… ………..……25

CERTIFICATE OF COMPLIANCE ....................................................26

CERTIFICATE OF SERVICE .............................................................27

# TABLE OF AUTHORITIES

**Cases:**                                                                    **Page(s)**

*Breard v. Alexandria*, 341 U.S. 622, 626, 71 S.Ct. 920, 95 L.Ed. 1233 (1951) ……….. 19

*California v. Ciraolo*, 476 U.S. 207, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986)......... .17

*Florida v. Jardines*,__.S.__, 133 S.Ct. 1409, 185 L.Ed.2d 495 (2013)......................
………………………………………………………………….17, 18, 19, 21, 22, 23

*Illinois v. Gates*, 462 U.S. 213, 238-39 (1983) …………………………………….23

*Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)…    16, 17

*Kentucky v. King*, 563 U.S. ——, ——, 131 S.Ct. 1849, 1862, 179 L.Ed.2d 865 (2011).
……………………………………………………………………………………….20

*Kyllo v. United States*, 533 U.S. 27, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001) ………
…………………………………………………………………..16, 17, 18, 21, 22

*Olmstead v. United States*, 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944 (1928)......... 16

*Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).......................... 16

*Stoner v. California*, 376 U.S. 483, 490 (1964)……………………………………....16

*Wong Sun v. United States*, 371 U.S. 471, 488 (1963) …………………………… 24

*United States v. Arboleda*, 633 F.2d 985 (2nd Cir. 1980). ..................................... 18

*United States v. Branch*, 537 F.3d 328, 337 (4th Cir. 2008)………………………..17

*United States v. Bullard*, 645 F.3d 237, 243 (4th Cir. 2011)………………..…...16

*United States v. Jones*, 565 U.S._____, 132 S.Ct. 945, 181 L.Ed.2d 911, (2012)….17

Statutes:

18 U.S.C. § 1001(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. 7

18 U.S.C. § 1028A(a)(1) and (c)…………………………………………… 7

18 U.S.C. § 3231 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

18 U.S.C. § 3742(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. 5

21 U.S.C. § 841(a)(1) and (b)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ….6, 7

21 U.S.C. § 846…………………………………………………………… 6

21 U.S.C. § 853 …………………………………………………… 7

Miscellaneous

U.S. Const. amend. IV . . . . . . . . …………………………….......................... 23

# JURISDICTIONAL STATEMENT

This is a direct appeal of his conviction by the Defendant in a federal criminal case. Jurisdiction was conferred upon the United States District Court under 18 U.S.C. § 3231. Appellate jurisdiction is conferred upon the Fourth Circuit Court of Appeals under 18 U.S.C. § 3742(a) and Federal Rule of Appellate Procedure 4(b). Defendant gave timely notice of appeal on March 27, 2014, from final judgment entered on March 14, 2014.

# STATEMENT OF THE ISSUE
# PRESENTED FOR REVIEW

Whether the defendant's Fourth Amendment rights against unreasonable search and seizure were violated when the government conducted a warrantless search of the threshold of the Defendant's hotel room, to include the air within the room, by using a certified K-9 Drug Detection Unit (dog); and, by the government's use of the results of this illegal search, essentially the alert by the Certified K-9 Drug Detection Unit (dog), as the basis for obtaining a Magistrate's issued search authorization for the room of the defendant.

# STATEMENT OF THE CASE

Defendant entered a conditional guilty plea in the United States District Court for the Eastern District of Virginia to a single charge of Conspiracy with intent to Distribute Cocaine. He was sentenced to a term of 175 months of imprisonment and the court determined that he was financially unable to pay the minimum $10,000.00 fine.

The conditional plea preserved defendant's right to appeal the district court's pretrial suppression ruling. The defendant challenged a search warrant that was based, in part, on the alert given by a K-9 Drug Detection Unit (dog sniff) of the area outside the threshold of a hotel room door. In a four-part ruling, the district court determined the following: 1) That use of a K-9 Drug Detection Unit to conduct a

"sniff test" in the common areas of a hotel, where law enforcement had permission to be, does not constitute a Fourth Amendment Search; 2) That a K-9 Unit's alert, absent additional corroborating evidence, is sufficient in and of itself to support issuance of a search warrant; 3) that the reliability of a K-9 Drug-Detection Unit's Alert may be established through recitation of the K-9 Units training and Certification records; and that, the warrant issued in this case, which authorized the search of fixed premises, was broad enough to provide the authority to open closets, chests, drawers, and containers wherever items listed on the warrant may be found.

Defendant now appeals, respectfully asserting the district court erred in upholding the search warrant, in that the warrant was procured based upon information obtained in violation of the appellant's Fourth Amendment rights.

## Nature of the Case

This is a direct appeal by defendant, Thomas Lamont Legall, following conditional guilty plea, judgment and sentence in the Eastern District of Virginia on a charge of conspiracy to distribute cocaine. Defendant appeals from the denial of his motion to suppress the fruits of a search of his hotel room.

Procedural History:   On November 14, 2012, defendant was indicted in the Eastern District of Virginia on one count of conspiracy to possession with intent to distribute cocaine in violation of 21 USC §846, 841(a)(1)and §841(b)(1)(A);

possession with intent to distribute cocaine, in violation of 21 USC §841(a)(1)and(b) and a 21 U.S.C. §853 forfeiture allegation. On February 21, 2013, the United States Attorney General superseded the indictment, adding the charges of providing a false statement, in violation of 18 USC §1001(a)(2); and aggravated identity theft, in violation of 18 USC §1028A(a)(1) and (c). On April 10, 2013, the United States Attorney's Office filed a second superseding indictment which added his brother, Isaiah Legall, to the indictment, but contained the same counts as the previous indictment.

Pretrial proceedings thereafter focused on defendant's motion to suppress the fruits of a search of his hotel room. (Docket No. 17, Appendix p. 13). Evidentiary hearing on the motion was held February 12, 2013, before District Judge Robert Dumar, and on February 19, 2013, the court issued an Opinion and Order denying the motion to suppress (Docket No. 24, Appendix p. 38).

Because the Judge's order was written before both the superseding and the second superseding indictment, the Defense renewed their motion to appeal in order to ensure that the ruling would apply to all of the charges (Docket No. 62, Appendix p. 78), but stipulated that the facts in the motion as they were presented at the motion hearing would be the same (Docket No. 68, Appendix p. 86).

On August 28, 2013, the district court filed a written order granting the Defense motion to allow them to file a supplemental motion to suppress but

denying the underlying motion to suppress on the merits (Docket No. 69, Appendix p. 8).

As a result of the court's ruling on the motion to suppress, on September 23, 2013, in front of Magistrate Judge Thomas Miller, Defendant pled guilty to one count of conspiracy to possess with the intent to distribute cocaine (Docket No. 77, Appendix p. 9), but preserved his right to appeal the ruling on the motion to suppress under the terms of the plea agreement (Docket No. 78, Appendix p. 12).

Defendant was found guilty and sentenced on March 11, 2014 (Docket No. 108, Appendix p. 10). Notice of appeal was timely filed March 27, 2014, (Docket No. 111, Appendix p. 11) from the judgment formally entered March 13, 2014 (Docket No. 108, Appendix p. 10).

## STATEMENT OF FACTS

The relevant facts are not in dispute, the defense previously stipulated as to their accuracy and they are repeated in this brief as they were recounted by Judge Robert Dumar in his February 19, 2013, opinion and order:

> On November 6. 2012, detectives of the Virginia Beach Police Department and Homeland Security Investigations received information suggesting the presence of illicit narcotics in Room 315 of the Country Inn & Suites ('"Country Inn") located at 5808 Burton Station Road in Virginia Beach. Virginia. A Norfolk Police Department K.-9 Drug-Detection Unit ("K-9 Unit""), consisting of Investigator W.T. Gibson

(•"Gibson**) and dog Dodger ("Dodger"), was called to the scene.

Gibson contacted the Country Inn's management upon his arrival and secured permission to "screen"* the third floor for the presence or odor of narcotics with Dodger. Gibson and Dodger *then* proceeded up a stairwell that opened onto the third floor. Upon stepping onto the third floor Gibson "deployed" Dodger, a ritual that conveys to Dodger that it is time to begin screening for narcotics. Dodger was deployed at approximately 6:25 P.M. Upon deployment. Dodger began to screen doors along the left side of the third-floor hallway. Dodger passed three doors without incident before reaching Room 315.

Dodger immediately "alerted" to the presence or odor of narcotics upon reaching Room 315, which in Dodger's case entails an aggressive response. Gibson explained at the suppression hearing, held on February 12, 2013, that Dodger is trained to use force to reach the source of any illicit narcotics he detects. In this case, Dodger immediately turned toward Room 315, brought his nose to the left side of the doorway, and tried to push his head through the door. Dodger then reached up with intent to scratch at the door. Upon seeing that Dodger intended to scratch the door, Gibson pulled him away so as to avoid alerting the room's occupants of their presence. At the February 12 hearing, Gibson testified that "[t]here was no doubt" Dodger's reaction to Room 315 was "an aggressive response to the odor of narcotics." After the alert, Gibson walked Dodger down the same stairwell and placed him in his vehicle. Gibson and another officer then left the scene to secure a search warrant.[1]

_____

[1] *As the search warrant was being obtained, other officers monitoring Room 315 witnessed a "'pizza delivery girl" on the third floor of the Country Inn. The officers stopped her and learned that the pizza was to be delivered to Room 315. At law*

Detective H. Schafer ("Schafer") completed the Search Warrant Affidavit ("Affidavit"), which was admitted into evidence at the February 12 hearing. Aff., ECF No. 23-1. (Appendix p.55) The Affidavit provides that Dodger screened doors on the third floor of the Country Inn and alerted "to the presence or odor of narcotics" in Room 315. Aff. 3, ECF No. 23-1 (Appendix p. 57). The Affidavit sought to establish probable cause based on: (1) Dodger's alert to Room 315; and (2) Schafer's training, experience, and knowledge. Aff. 3, ECF No. 23-1. (Appendix p. 57)

The Affidavit also sets forth Gibson and Dodger's training and certification record. Aff. 4, ECF No. 23-1. (Appendix p. 58) Gibson confirmed the accuracy of those records through his testimony at the February 12 hearing. With respect to Gibson, the Affidavit provides:

> *Inv WT Gibson has been recognized as an expert witness in the recognition, packaging and use of narcotics in Norfolk General District Courts and Norfolk Circuit Courts. Inv WT Gibson has completed over 625 hours of training in the field of K9 Narcotic Detector Dog training and graduated the Norfolk Police Narcotic Detector Dog Program on February 13, 2009. Inv WT Gibson also has certified with Norfolk Police K-9 "Dodger" through the standards set fourth [sic] by Virginia Police Work Dog Association. Inv WT Gibson has been involved in numerous investigations, search warrants, operations, and surveillances relating to*

---

*enforcement's request the pizza-delivery girl returned to the Country Inn's lobby. The officers then had Country Inn staff call up to Room 315 and explain that the pizza would need to be retrieved from the lobby. Shortly thereafter, officers witnessed the Defendant exit Room 315 and proceed toward the lobby. The officers took the Defendant into custody and he was detained until the search warrant was secured and executed. The Defendant has never challenged the legality of that detention.*

*narcotic offenses. This affiant has also conducted interviews with several narcotic dealers and users. Investigator Gibson has attended numerous narcotic related schools and training seminars sponsored by the Virginia Department of Criminal Justice Services, City of Norfolk, Drug Enforcement Administration, and Bureau of Alcohol Tobacco and Firearms.* (Emphasis added)

Aff. 4, ECF No. 23-1. (Appendix p. 58) As for Dodger, the Affidavit provides:

*Canine "Dodger" has been working since October 17, 2008 and has completed over 625 hours training and graduated the Norfolk Police Narcotic Detector Dog Program on February 13, 2009. Canine "Dodger" is also certified in the detection of narcotics: Cocaine, Heroin, Methamphetamine, Marijuana and Ecstasy through the standards set fourth [sic] by Virginia Police Work Dog Association[.]*(Emphasis added).

Aff. 4, ECF No. 23-1. (Appendix p. 58) The Court also learned at the February 12 hearing that Gibson and Dodger accumulated the majority of their 625 training hours while working together.

Based on the information set forth in the Affidavit, ECF No. 23-1, (Appendix p. 55) a Magistrate Judge of the Virginia Beach Circuit Court approved a Search Warrant ("Warrant"), ECF No. 23-2, for Room 315 of the Country Inn on November 6, 2012 at 7:54 P.M. The Warrant authorized law enforcement to search Room 315 for "Schedule I or II narcotics, Marijuana, packaging materials, books, ledgers, records, firearms, and any other documentation to record monies spent, monies owed, and other transactions related to the Possession of Schedule I or II narcotics, and Marijuana." Warrant 1, ECF No. 23-2. (Appendix p. 59)

Four minutes later, at 7:58 P.M., five officers executed the Warrant for Room 315. Detective John Belsha ("Belsha") of the Virginia Beach Police Department was one of the five officers who executed the Warrant. Belsha testified at the February 12 hearing that he does not recall reviewing the Warrant prior to its execution.

Belsha further testified that upon entry the officers secured Room 315 to ensure that there were no threats. Belsha then proceeded to search the front part of the room. Inside the room sat a dresser of drawers located immediately to the left of, and two to three feet from, the doorway into Room 315. Belsha opened the top drawer and found a single item, a gift-wrapped package about twelve inches in length and weighing about two pounds. Belsha testified that he suspected the package contained a kilogram of narcotics based on its weight. He then partially tore open the gift wrapping to view the package's contents, but found another layer of cellophane wrapping. Belsha testified that he had come across cocaine packaged in cellophane many times before. He then cut through the cellophane wrapping to expose a white powder. A field test was conducted, and the powder tested positive for cocaine.

 (Docket No. 24, pps. 1-4) (footnotes omitted and references to Appendix added). (Appendix p. 38)

## SUMMARY OF THE ARGUMENT

Upon receiving information concerning the possibility that there may be

illegal narcotics present in room 315 of the Country Inn and Suites hotel located in

Virginia Beach, Officers of a Joint Narcotics Task Force conducted a screen of

approximately four of the rooms on the left hand side of the hallway on the third

floor. The method used for conducting this screen was the deployment of a highly

trained K-9 Drug Detection Unit (dog) (hereinafter K-9). The K-9 screened four hotel room doors on the third floor of the hotel. The K-9 alerted on room 315 by immediately turning toward Room 315, bringing his nose to the left side of the doorway, and trying to push his head through the door (Docket No. 24, pps. 1-4, Appendix p. 38). The K-9 handlers testified that this was considered a positive alert by the K-9 and indicated the presence of narcotics. The K-9 Handlers also certified both at the suppression hearing and in their affidavit to the Magistrate (Docket No. 17, attachment 1, Appendix p. 13).

After the alert by the K-9 and while one of the members of the Task Force was obtaining the search authorization, the Task Force Members noticed a pizza delivery person in the process of attempting to deliver pizza to room 315. One of the task force members asked that the delivery person call the room and the defendant was summoned down to the front desk to retrieve his pizza. This person summoned down to the desk was later determined to be Mr. Legall. Accordingly, the fact that Mr. Legall was the registered guest in room 315 was never challenged by the Government.

Members of the task force thereafter obtained a warrant based upon the alert by the K-9. However, it should be noted, that although Investigator W.T. Gibson testified that they had received a tip concerning the possible presence of narcotics in room 315, this information was not provided in the affidavit (since the affidavit did not contain any

14

information concerning a tip that narcotics were present in room 315 and there is no indication that any other facts but those contained in the affidavit were provided to the magistrate).

Defendant submits that the use of a drug dog to sniff the door of the defendant's hotel room was indeed an unreasonable intrusion upon his property and privacy interests and constituted a warrantless search in violation of the Fourth Amendment. In *Florida v. Jardines*,_U.S.__, 133 S.Ct. 1409, 185 L.Ed.2d 495 (2013), the Supreme Court held that a canine sniff of the porch and front door of Jardines's house violated the Fourth Amendment because law enforcement had no license or privilege to intrude upon Mr. Jardines's property to conduct a search. Every person is entitled to the same protection against the government's use of dogs at their front door, regardless whether the area where they have an expectation of privacy is a home, an apartment, or a temporary living space such as an apartment. *Jardines* controls here and makes it clear that the warrantless dog sniff of defendant's apartment door was a violation of the Fourth Amendment.

Defendant also respectfully submits that the illegal K-9 search fatally tainted the warrant based upon it. Without the facts noting the drug dog alert, the affidavit would have been void of any other facts to establish probably cause for the search.

**ARGUMENT**

## I.    THE DEFENDANT HAS THE SAME EXPECTATION OF PRIVACY IN HIS HOTEL ROOM AS HE WOULD ENJOY IN HIS HOME.

The United States Supreme Court has held that "wherever an individual may harbor a reasonable 'expectation of privacy,' he is entitled to be free from unreasonable government intrusion." *Terry v. Ohio*, 392 U.S. 1, 9 (quoting *Katz v. United States*, 389 U.S. at 351 (Harlan, J., concurring)). The United States Supreme Court has further explained that "'[a]t the very core' of the Fourth Amendment 'stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.'" *Kyllo v. United States*, 533 U.S. 27, 31 (2001).

In *United States v. Bullard*, 645 F.3d 237, 243 (4th Cir. 2011), the government conceded that a hotel guest clearly has a reasonable expectation of privacy in his hotel room. The Supreme Court in *Stoner v. California*, 376 U.S. 483, 490 (1964) held that "[n]o less than a tenant of a house, or the occupant of a room in a boarding house, a guest in a hotel room is entitled to constitutional protection against unreasonable searches and seizures." Thus, Mr. Legall had the same reasonable expectation of privacy in his hotel room that he would have in a single family home. When the K-9 unit searched each individual door, this was no different than the K-9 unit searching each individual door at an apartment building.

## II.    THE SEARCH OF DEFENDANT'S HOTEL ROOM WAS AN

**UNREASONABLE INTRUSION UPON THE
PROPERTY AND PRIVACY INTERESTS OF THE
DEFENDANT IN VIOLATION OF THE FOURTH
AMENDMENT.**

<u>Standard of Review</u>:   In this Fourth Amendment suppression challenge the

district court's fact findings are reviewed for clear error, but its application of the

good faith doctrine and related conclusions of law are reviewed *de novo*.  The

evidence is viewed in the light most favorable to the prevailing party below.

*United States v. Branch*, 537 F.3d 328, 337 (4th Cir. 2008).

<u>Merits</u>:  Defendant respectfully submits that law enforcement conducted an

illegal warrantless canine search of his hotel room and that the fruits of the search

should be suppressed.

A Fourth Amendment search occurs when law enforcement intrudes upon a

reasonable expectation of privacy, <u>see</u> *California v. Ciraolo*, 476 U.S. 207, 211, 106

S.Ct. 1809, 1811, 90 L.Ed.2d 210 (1986), <u>citing</u> *Katz v. United States*, 389 U.S.

347, 360, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring), or

otherwise invades or trespasses upon a protected property interest.  <u>See</u> *Florida v.*

*Jardines*, 133 S.Ct. 1409, 1414, 185 L.Ed.2d 495 (2013); *United States v. Jones*,

565 U.S.____,_____, 132 S.Ct. 945, 950-951, 181 L.Ed.2d 911 (2012).  In

*Jardines*, five members of the Supreme Court held that law enforcement use of a

drug detection dog to sniff the front porch and door of a private home was a

violation of the Fourth Amendment because the conduct was an "unlicensed physical intrusion" into a constitutionally protected area--the curtilage of the home. *Jardines*, 133 S.Ct. at 1414-1416. Three members of the court also found the conduct violative of the Fourth Amendment because it infringed a reasonable expectation of privacy. *Jardines*, 133 S.Ct. at 1418-1419 (Kagan, J., joined by Ginsburg and Sotomayer, J.J., concurring).

Defendant respectfully submits that the canine search of his hotel room door was a clear Fourth Amendment violation under *Jardines*. The similarity concerning the issue of the more limited expectation of privacy in the hallway in front of a hotel door versus a front porch can be better addressed by considering exactly what the K-9 is searching.

Curtilage is admittedly a more difficult concept where a hotel room, as opposed to a house, is involved. See *United States v. Arboleda*, 633 F.2d 985, 992 (2nd Cir. 1980). But however one defines the curtilage of one's room, it should surely include the threshold of the front door. The dog here "sniffed" at defendant's hotel room door (Docket No. 26, p. 3, Appendix p. 63), physically touched the door, and stuck his head under the door. The handler had to pull the K-9 away from the door so that his aggressive alert did not warn the person inside of the room.

It is a search when government agents bring a drug-sniffing dog to the front door

of a person's home to examine the home for the presence of drugs. The dog makes

perceptible what otherwise was not perceptible. Such a search is presumptively

unreasonable without a warrant. *Kyllo v. United States*, 533 U.S. 27 (2001). The defense

argues, as did Justice Kagan in her concurrence in *Florida v. Jardines*, ___ U.S.____,

___, 133 S.Ct. 1409, 1419, 185 L.Ed.2d 495 (2013), where she notes that Kyllo would

probably be controlling in this case for the proposition that:

> "where the Government uses a device that is not in the public use, to
> explore the details of a home, which would otherwise be unknowable
> without physical intrusion, the surveillance is a search and is presumptively
> unreasonable without a warrant." Id., at 1419, *citing Kyllo, 533 U.S. 27.*

In this instance, the Defendant was residing in the hotel room for an undetermined

period of time. It was never established when he began staying there and it was never

established when he was scheduled to leave. However, as stated above, Mr. Legall had

the same expectation of privacy as if he were in his home, an apartment or a

condominium. In the opinion for the majority, Justice Scalia discusses the difference

between other parties, to include law enforcement, having access to be present in the

area surrounding the home, a license allowing the person to attempt entry versus

permission of the person to go further than a normal knock for permission to enter.

In *Jardines*, Justice Scalia explains the diffence in the following manner:

> We have accordingly recognized that "the knocker on the
> front door is treated as an invitation or license to attempt an
> entry, justifying ingress to the home by solicitors, hawkers

and peddlers of all kinds." *Breard v. Alexandria*, 341 U.S. 622, 626, 71 S.Ct. 920, 95 L.Ed. 1233 (1951). This implicit license typically permits the visitor to approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave. Complying with the terms of that traditional invitation does not require fine-grained legal knowledge; it is generally managed without incident by the Nation's Girl Scouts and trick-or-treaters.2 *1416 Thus, a police officer not armed with a warrant may approach a home and knock, precisely because that is "no more than any private citizen might do." *Kentucky v. King*, 563 U.S. ——, ——, 131 S.Ct. 1849, 1862, 179 L.Ed.2d 865 (2011).

But introducing a trained police dog to explore the area around the home in hopes of discovering incriminating evidence is something else. There is no customary invitation to do that. An invitation to engage in canine forensic investigation assuredly does not inhere in the very act of hanging a knocker.3 To find a visitor knocking on the door is routine (even if sometimes unwelcome); to spot that same visitor exploring the front path with a metal detector, or marching his bloodhound into the garden before saying hello and asking permission, would inspire most of us to—well, call the police. The scope of a license—express or implied—is limited not only to a particular area but also to a specific purpose. Consent at a traffic stop to an officer's checking out an anonymous tip that there is a body in the trunk does not permit the officer to rummage through the trunk for narcotics. Here, the background social norms that invite a visitor to the front door do not invite him there to conduct a search.4

Accordingly, the defendant is arguing that, while the police and other members of the public have the invitation to walk in the hallway of the hotel and to approach the door, the employment of a highly trained K-9 Drug Detection unit to sniff at the door for the purpose of ascertaining whether or not drugs exist within the room is too far. If

20

this enhanced search technique did not exist, the police would not be allowed entry without a warrant. It is only because the K-9 has these enhanced investigative abilities that the police are able to overcome and essentially enter the confines of the room by sniffing the contents at the door.

Justice Scalia further points out that "the scope of the license [to approach the door] – express or implied – is limited not only to a particular area but also to a specific purpose." *Jardines,* 133 S.Ct. 1409*,* 1416. Also, Justice Kagan, in her concurrence, goes even further by clarifying that she would have been equally happy to decide the case merely on the privacy interests which were at stake in the instant case. In relation to these privacy interests, which the Appellant contends should be the same for a home as the inside of a hotel room, Justice Kagan opines that this type of search was already decided in *Kyllo v. United States*, 533 U.S. 27, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001). She states that:

> [t]he *Kyllo* Court held that police officers conducted a search when they used a thermal-imaging device to detect heat emanating from a private home, even though they committed no trespass. Highlighting our intention to draw both a "firm" and a "bright" line at "the entrance to the house," id., at 40, 121 S.Ct. 2038, we announced the following rule:
>
> "Where, as here, the Government uses a device that is not in general public use, to explore details of the home that would previously have been unknowable without physical intrusion, the surveillance is a 'search' and is presumptively unreasonable without a warrant." *Ibid.* That "firm" and "bright" rule governs this case: The police

> officers here conducted a search because they used a "device ... not in general public use" (a trained drug-detection dog) to "explore details of the home" (the presence of certain substances) that they would not otherwise have discovered without entering the premises.

The defense would concede that the drug task force did not violate the defendant's privacy rights by entering the hotel, by walking up to his door or by being outside of his door. However, when they employed the trained K-9 to ascertain the contents of his room, the government violated the defendant's privacy rights and by extension his Fourth Amendment Rights against unreasonable searched and seizures.

In this instance, the point of using the drug dog was to ascertain what it was this is in the room that could not been seen or discovered without the use of a highly trained expert K-9. The point was for the K-9 to discover what was protected by the defendant's privacy interest on the inside of the door. As the right to privacy has been extended to hotel rooms, it should not matter whether your front door is a hotel room, a duplex, or a shabby apartment. The use of a drug dog by law enforcement to sniff up your front door is an unlicensed and unreasonable intrusion, and constitutes a search under the Fourth Amendment.

Defendant also respectfully submits, in accord with the view of the concurring Justices in *Jardines*, that the conduct here infringed a reasonable expectation of privacy. Property and privacy interests really converge in these

circumstances. One closes their door for security and privacy, and it was only

through the use of an extraordinary means that law enforcement was able to detect

what was in the home. Given the extra-sensory measures employed by law

enforcement, and the high value that the Fourth Amendment places upon the home,

it's clear that the dog search infringed a reasonable expectation of privacy. See

*Kyllo v. United States*, 533 U.S. 27, 40, 121 S.Ct. 2038, 2046, 150 L.Ed.2d 94

(2001); *Jardines*, 133 S.Ct. at 1419-1420 (Kagan, J., concurring).


**III.    THE WARRANT TO SEARCH DEFENDANT'S HOTEL ROOM WAS BASED, IN MATERIAL PART, ON AN ILLEGAL PREDICATE SEARCH AND THEREFORE VIOLATES THE APPELLANT FOURTH AMENDMENT RIGHTS.**

The alert by the K-9 was the sole basis used to provide probable cause for the

issuance of the affidavit for search (Docket No. 17, attachment 1, Appendix p. 13).

As this was the basis for the probable cause determination, exclusion of this evidence

would result in their being no basis for the issuance of a search authorization.

The Fourth Amendment provides that "[t]he right of the people to be secure in

their persons, houses, papers, and effects, against unreasonable searches and

seizures, shall not be violated, and no warrants shall issue, but upon probable cause."

U.S. Const. amend. IV. A magistrate's determination that probable cause exists for

issuance of a search warrant is entitled to great deference when a trial court is

considering a motion to suppress. *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983) ("[T]he duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing] that' probable cause existed.") In determining probable cause to issue a search warrant for Room 315, the only information that the magistrate considered was the alleged alert by the drug dog.

Because the search and seizure was unlawful in this case, all fruits of the search and seizure must be suppressed. Evidence that is derived from an illegal search or seizure is tainted and thus inadmissible. *Wong Sun v. United States*, 371 U.S. 471, 488 (1963). All fruits and evidence derived from the illegal search and seizure of Room 315 must be suppressed.

## CONCLUSION

For all the above reasons, defendant-appellant respectfully requests that this court reverse the order denying his motion to suppress and remand for further proceedings.

Respectfully submitted,

/s/ Crystina M. O'Brien
Crystina M. O'Brien
Virginia Bar Number: 72182
The O'Brien Law Firm, PLC
21 E. Queens Way, STE B
Hampton, VA 23669
Phone:(757)915-6986
Facsimile:(757)915-6988
cob@cobrienlawfirm.com

## REQUEST FOR ORAL ARGUMENT

Appellant respectfully requests that he be granted 15 minutes of oral argument to address the issues presented.

CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

## Certificate of Compliance With Type-Volume Limitation, Typeface Requirements and Type Style Requirements

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

    _X_  This brief contains __4879__ words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii); or

    ____  This brief uses a monospaced typeface and contains lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and type style requirements of Fed. R. App. P. 32(a)(6) because:

    _X_ This brief has been prepared in a proportionally spaced typeface using Microsoft Word  in 14 pt Times New Roman type style; or

    ___ This brief has been prepared in monospaced typeface using ____ _____ word processing program in _____ font and type style.

Signed:  __Crystina M. O'Brien, Esq.__

Attorney for:_ Thomas Lamont Legall_

Date:  _June 26, 2014_____

## CERTIFICATE OF FILING AND SERVICE

I certify that on June 26, 2014, I electronically filed the foregoing brief and

the appendix with the Clerk of Court for the United States Court of Appeals for the

Fourth Circuit by using the CM/ECF system. Participants in the case who are

registered CM/ECF users will be served by the CM/ECF system.

/s/ Crystina M. O'Brien
Crystina M. O'Brien
Virginia Bar Number: 72182
The O'Brien Law Firm, PLC
21 E. Queens Way, STE B
Hampton, VA 23669
Phone:(757)915-6986
Facsimile:(757)915-6988
cob@cobrienlawfirm.com

Copy to:
Mr. Eric Hurt
Assistant U.S. Attorney
Office of the U.S. Attorney
721 Lakefront Commons, Suite 300
Newport News, Virginia 23606
757.591.4000
Eric.Hurt@usdoj.gov